J-S29042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICARDO L. NOBLE | : | |
| | : | |
| Appellant | : | No. 153 WDA 2024 |

Appeal from the PCRA Order Entered January 5, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000318-1992

BEFORE:  DUBOW, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: October 1, 2024**

Appellant, Ricardo L. Noble, appeals *pro se* from the post-conviction court's January 5, 2024 order dismissing his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

We glean the following facts and procedural history of Noble's case from the certified record and prior decisions of this Court.

> In 1992, Noble was found guilty following a jury trial of second-degree murder, robbery and criminal conspiracy after he and two other individuals robbed and killed a cab driver.  ***Commonwealth v. Noble***, 1770 Pittsburgh 1992, at *1 (Pa. Super. February 3, 1994) (unpublished memorandum), *allocatur* denied, 647 A.2d 899 (Pa. 1994).  Because there was conflicting evidence regarding which of the three defendants actually shot and killed the victim, Noble was convicted of second-degree murder because the killing occurred during the course of a robbery.  At the time of the murder, Noble was 15 years old.  Noble was sentenced to life in prison without the possibility of parole, as was mandatory at the

time, and this [C]ourt affirmed the judgment of sentence. [**See id.**]

**Commonwealth v. Noble**, No. 204 WDA 2020, unpublished memorandum at *2 (Pa. Super. filed July 21, 2020).

Decades after Noble's conviction, the United States Supreme Court decided **Miller v. Alabama**, 576 U.S. 460 (2012), and **Montgomery v. Louisiana**, 577 U.S. 190 (2016).

> [I]n **Miller**, the United States Supreme Court held that it is unconstitutional for states to sentence juvenile homicide defendants to mandatory sentences of life imprisonment without the possibility of parole. In **Montgomery**, the Court determined that the **Miller** holding constituted a substantive rule of constitutional law that must be applied retroactively to cases on collateral review. Following the decision in **Montgomery**, Noble filed a … []PCRA[] petition alleging that his sentence was illegal. The trial court granted relief, vacating his judgment of sentence and scheduling a resentencing hearing in accordance with **Miller** and **Montgomery**.

**Noble**, No. 204 WDA 2020, unpublished memorandum at *2-3 (citations omitted).

Noble's resentencing hearing was conducted on January 29, 2018. Noble was represented at that proceeding by Robert Barbato.[1] At the close of Noble's resentencing hearing, the court imposed a term of 40 years' to life incarceration for his conviction of second-degree murder. Noble filed a timely appeal, after which Noble indicated his desire to proceed *pro se*. We remanded

---

[1] As Robert Barbato has since been disbarred, we refer to him simply as "Barbato" herein, rather than "Attorney Barbato."

for the trial court to conduct a *Grazier*[2] hearing, following which Noble was permitted to represent himself on appeal. This Court then remanded Noble's case again, this time for the limited purpose of allowing him to file post-sentence motions. **See Commonwealth v. Noble**, No. 420 WDA 2018, unpublished memorandum at *22 (Pa. Super. filed Apr. 15, 2019).

On remand, Noble filed a timely, *pro se* post-sentence motion, which was denied. He then filed a timely, *pro se* appeal from his January 29, 2018 judgment of sentence. After this Court affirmed Noble's sentence, our Supreme Court denied his petition for allowance of appeal. **See Commonwealth v. Noble**, 239 A.3d 85 (Pa. Super. 2020) (unpublished memorandum), *appeal denied*, 279 A.3d 1181 (Pa. 2022). Noble then filed a petition for writ of *certiorari* with the United States Supreme Court, which was also denied on October 17, 2022.

On August 21, 2023, Noble filed a *pro se* PCRA petition. Therein, he challenged the legality of his sentence, argued that Barbato acted ineffectively in various ways when representing him at the resentencing hearing, and raised several claims of error by the trial and resentencing courts. PCRA counsel was appointed, but after Noble informed counsel that he wished to proceed *pro se*, counsel filed a petition to withdraw. The PCRA court conducted another *Grazier* hearing, after which it granted counsel's petition to withdraw and again permitted Noble to proceed *pro se*. On December 7,

---

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

2023, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Noble's petition without a hearing. Noble filed a *pro se* response, but on January 5, 2024, the court issued an order dismissing his petition.

Noble then filed a timely, *pro se* notice of appeal. He also complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a Rule 1925(a) opinion on March 8, 2024, indicating that it was relying on the rationale set forth in its Rule 907 notice for dismissing Noble's petition.

In Noble's *pro se*, handwritten brief, he states the following fifteen issues for this Court's review, which we reproduce verbatim:

1. Did court abuse discretion by ignoring and not addressing the issue that stated that, at Juvenile Lifer appellant's Resentencing in 2018, Resentencing Judge recanted <u>the only reason</u> he claimed he denied decertifying appellant to Juvenile system in 1992 because it was proven False, thus any sentence or conviction on said charges in adult criminal system is illegal, unconstitutional, null and void?

2. Did court abuse discretion by failing to find that the cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective/prejudiced appellant by maliciously/falsely stating in sentence memorandum that appellant does not deny being guilty without appellant's knowledge or consent, despite knowing that appellant always stated (and the evidence proved) he is innocent of all charges?

3. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Robert Barbato) was ineffective/prejudiced appellant by requesting 20 to 60 year sentence in sentence memorandum without appellant's knowledge or consent, then against appellant's repeated objections at Resentencing Hearing?

4. Did court abuse discretion by failing to find that the cocaine/marijuana addicted attorney (Robert Barbato) was

- 4 -

ineffective by withholding documents and refusing to communicate with appellant about case?

5. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Barbato) was ineffective/erred by making negative, false, and misleading statements against appellant in sentence memorandum and only reviewing and agreeing with portions of appellant's prison file provided by prosecution and prosecution's negative, false, and misleading interpretation of it?

6. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Barbato) was ineffective for not objecting to prosecution's negative, false, and misleading prejudicial statements in sentence memorandum and actions and statement at Resentencing?

7. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Barbato) was ineffective/erred by compiling and submitting incomplete mitigation evaluation and report with negative, false, and misleading information knowingly?

8. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Barbato) was ineffective/erred by attacking favorable recommendations of expert witnesses who recommended that appellant be placed in juvenile system at 1992 Decertification Hearing in 01/22/2018 sentence memorandum?

9. Did court abuse discretion by not addressing each PCRA issue including, but not limited to, all ineffective assistance of counsel claims against attorney Barbato?

10. Did court abuse discretion by ignoring attorney Barbato's admission that his alcohol, marijuana, and cocaine addiction caused him to neglect/sabotage his clients' cases from 2014 to 2020?

11. Did court abuse discretion by failing to find that cocaine/marijuana addicted attorney (Barbato) was ineffective/erred by not objecting to and seeking to correct significant errors in the Resentence Hearing transcript/transcription, thus prejudicing appellant's past, present, and future court proceedings?

12.   Did court abuse discretion by ignoring issue that a sentence and conviction form a single judgment for appellate review, thus re-opening and/or new judgment of <u>sentence</u> challenge for review also allows challenging <u>conviction</u> errors for review?

13.   Did court abuse discretion by not finding that trial judge (Shad Connelly) erred/abused discretion by not granting demurrer to all charges at trial?

14.   Did court abuse discretion by not finding that trial judge abused discretion by restricting appellant's trial attorney (James Moran) cross-examination of prosecution witness (Diedra Carr) as to what she was told by defendants Johnson and Howard about defendants' alleged intentions when cab was called?

15.   Did court abuse discretion by not finding that trial judge abused discretion by refusing to remove jurors with disqualifying views including, but not limited to, Mary Hayes, who asked to be removed twice because she can't be fair and impartial because she personally knows Erie Police Officer Jerome Odom, his cousin (adverse alleged co-defendant Stephon Johnson), and other prosecution witnesses?

**See** Appellant's Brief at 2-4 (emphasis in original).[3]

_____

[3] "[I]t has been held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to them." **Estate of Lakatosh**, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995) (citation omitted).   Indeed, "[a]ppellate advocacy is measured by effectiveness, not loquaciousness."   **Id.** (citation omitted).   Noble's loquaciousness in this case extends beyond his appellate brief, as he has also filed hundreds of pages of exhibits, and several *pro se* petitions seeking various forms of relief.

In one *pro se* petition, Noble asked this Court to direct the PCRA court and/or Commonwealth to turn over various documents to him.  On July 15, 2024, we issued a *per curiam* order denying Noble's petition, without prejudice to his "right to apply directly to the PCRA court for the requested relief." Order, 7/15/24, at 1 (single page).  On July 29, 2024, Noble filed a *pro se* document entitled "Notice to Court: Attached Motion to Lower Court[,]" which this Court labeled an "Application for Reconsideration."   Therein, Noble claimed that he filed a motion for documents with the PCRA court, and asked

*(Footnote Continued Next Page)*

Before delving into Noble's claims, we recognize that:

> "In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." **Commonwealth v. Johnson**, … 966 A.2d 523, 532 ([Pa.] 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." **Id.**

**Commonwealth v. Matias**, 63 A.3d 807, 810 (Pa. Super. 2013)

Noble first argues that his conviction and sentence are illegal, as his case was unconstitutionally tried in adult court rather than juvenile court. Preliminarily, we explain that, when a juvenile has committed the crime of murder, his case goes directly to the criminal division of adult court, but he may request treatment within the juvenile system through a transfer process called "decertification." **Commonwealth v. Sanders**, 814 A.2d 1248, 1250 (Pa. Super. 2003). It is the juvenile's burden to prove, "by a preponderance of the evidence[,] that the transfer will serve the public interest." **Id.** (quoting 42 Pa.C.S. § 6322(a)). The Juvenile Act, 42 Pa.C.S. §§ 6301-6375, sets forth a list of factors the decertification court must consider in determining whether the juvenile has demonstrated that transfer to juvenile court will serve the

---

that we stay this appeal pending the PCRA court's decision. On August 5, 2024, this Court issued a *per curiam* order denying Noble's "Application for Reconsideration." On August 14, 2024, Noble filed a *pro se* "Application for Clarification." It appears from that document that Noble is confused as to the status of his instant appeal. Our Court deferred disposition of Noble's "Application for Clarification" to this merits panel, and we now deny it as moot, given that our issuance of this memorandum decision shall clarify the status of this appeal for Appellant.

public interest, including: the impact of the offense on the victim(s) and community; the threat to public safety; the nature and circumstances of the offense; and whether the child is amenable to treatment, supervision or rehabilitation as a juvenile considering, *inter alia*, their age, mental capacity, maturity, and previous record, if any. ***See*** 42 Pa.C.S. § 6355(a)(4)(iii).

Instantly, Noble contends that, in denying his pretrial decertification request, the trial judge relied solely on the fact that there was "uncontradicted evidence" that Noble was the shooter in this case. Noble's Brief at 9. He claims, however, that the same judge then "recanted" this reasoning at Noble's 2018 resentencing hearing, when the judge stated: "No one is saying today, at least I'm not, that you are here as the shooter. That has not been proven in court, at least not up to this point." N.T. Resentencing Hearing, 1/29/18, at 30. Noble now insists that, because the judge retracted his determination that Noble was the shooter in this case, which was the sole basis for denying Noble's decertification request, it renders Noble's conviction and sentencing in adult court as "illegal, unconstitutional, null and void." Noble's Brief at 15.

No relief is due. Initially, we deem Noble's challenge to the denial of his decertification as untimely. This Court

> held in ***Commonwealth v. Dehart***, 730 A.2d 991, 994 n. 2 (Pa.Super.1999), [that] a successful first PCRA petition does not "reset the clock" for the calculation of the finality of the judgment of sentence for purposes of the PCRA where the relief granted in the first petition neither restored a petitioner's direct appeal rights nor disturbed his conviction, but, rather, affected his sentence

only. We reached this conclusion because the purpose of the PCRA is to prevent an unfair conviction.

**Commonwealth v. McKeever**, 947 A.2d 782, 785 (Pa. Super. 2008) (citing **Dehart**, 730 A.2d at 994 n. 2).

Here, Noble's first PCRA petition was successful, in that his life-with-parole sentence was vacated and he was afforded resentencing. That petition did not disturb Noble's convictions, which therefore became final in 1994 after our Supreme Court denied his petition for allowance of appeal and he did not seek further review by the United States Supreme Court. Consequently, Noble's present claim that the trial court improperly denied his request for decertification is untimely. Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States

> or the Supreme Court of Pennsylvania after the time
> period provided in this section and has been held by
> that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

Instantly, even if we considered Noble's argument that the judge's 2018 "recantation" of his basis for denying Noble's decertification request as an attempt to satisfy the new-fact exception to the timeliness requirement, that claim would fail. Essentially, in stating at the resentencing hearing that Noble was not proven to be the shooter, the judge was referring to the inadequacy of the evidence presented at trial to prove that fact. Clearly, Noble was present at trial and heard the same evidence that the trial judge and jury heard. Thus, Noble could have argued, before 2023, that the evidence failed to prove he was the shooter and, consequently, the trial court erred by denying his decertification request solely on that basis. In other words, the judge's statement at the 2018 resentencing hearing did not reveal any 'new fact' to Noble that he did not already know and could have raised sooner, had he exercised due diligence.

In any event, we also point out that the record belies Noble's claim that the trial court denied his decertification request **_solely_** because it believed he was the shooter in this case. Namely, the court's order denying decertification states that it considered

> all of [Noble's] and [the] Commonwealth's exhibits, as well as [Noble's] age; mental capacity; maturity; degree of criminal sophistication exhibited by the child; previous records, if any; the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child; whether the child can be rehabilitated

- 10 -

prior to the expiration of the Juvenile Court jurisdiction; probation or institutional reports, if any; the nature and circumstances of the acts for which the transfer is sought; and any other relevant factors….

Order, 5/8/92, at 1 (single page). Additionally, although the court stated, in its subsequent opinion, that the evidence indicated Noble filed the fatal shot, the court also "concluded that no psychological or psychiatric reasons warranted the transfer of [Noble] out of criminal court." Opinion, 2/8/93, at 12 (citation omitted). This record demonstrates that the court did not deny Noble's request for decertification solely on the grounds that he was the shooter, but for various other reasons, as well. Thus, even if timely, we would conclude that the judge's statements at Noble's 2018 resentencing hearing do not demonstrate that the same judge committed an abuse of discretion in denying Noble's decertification request. **See Sanders**, 814 A.2d at 1250 ("Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion.") (citations omitted).

In Noble's second through eighth issues, he contends that Barbato acted ineffectively in representing him during the resentencing process. Many of Noble's claims include repetitive and overlapping arguments and, thus, we will address all his ineffectiveness claims together, mindful of the following:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance

- 11 -

was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 ... (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694….)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Instantly, Noble claims that Barbato was ineffective in representing him in numerous ways, largely due to the fact that from 2014 to 2020, Barbato was addicted to cocaine, marijuana, and alcohol, which ultimately led to Barbato's arrest and conviction in 2020 for forgery and theft-related offenses committed against several clients. Noble insists that Barbato's misconduct in

other clients' cases supports his assertions that Barbato also acted ineffectively in representing Noble in various ways.

For instance, Noble claims that Barbato failed to investigate "all mitigating circumstances concerning [Noble] and [his] case[,]" and made "negative, false, and misleading statements against Noble in [the] sentencing memorandum." Noble's Brief at 22. More specifically, Noble takes issue with the fact that Barbato did not claim Noble was innocent in the sentencing memorandum but, instead, he made statements like Noble "shares guilt" and "is not looking to be absolved from any wrongdoing…." *Id.* at 18. Noble also contends that Barbato acted ineffectively by stating that Noble was "requesting a 20 to 60 year sentence" when instead, the "only sentence [Noble was] requesting [was] immediate release from incarceration and no parole or probation time after release." *Id.* at 19.

Noble further asserts that Barbato refused "to communicate with [Noble] about [the] case" and "withheld documents and filings" from him, including "witness statements, trial transcripts, and appeal [b]riefs." *Id.* at 21. Noble also maintains that Barbato failed to review Noble's actual prison file, and improperly relied on the "Juvenile Lifer Information Packet" that was "provided by the prosecution…." *Id.* at 22. Noble contends that, had Barbato examined his actual prison file, Barbato would have discovered – and then challenged – the accuracy of the information provided to the resentencing court by the Commonwealth about Noble's misconducts in prison. Noble then devotes many pages of his brief to identifying the alleged inaccuracies in the

Commonwealth's sentencing memorandum regarding his prison record. ***See***

***id.*** at 24-35. Noble insists that, rather than attacking these inaccuracies,

Barbato

> made [Noble's] sentenc[ing] memorandum to mainly complement, not oppose, [the] prosecution's sentenc[ing] memorandum. Barbato did not request or review [Noble's] entire prison file relevant to resentencing and only reviewed and agreed with [the] portions of [Noble's] prison file provided by [the] prosecution and [the] prosecution's negative, false, and misleading interpretation of it.

***Id.*** at 35.

Noble also claims that Barbato acted ineffectively by hiring William Niles

as the mitigation specialist who compiled Noble's mitigation report. According

to Noble, the report submitted by Niles "did not present any mitigating

factors/evidence regarding [the] case" and "falsely state[d] that [Noble was]

'offering' to accept a sentence of 20 to 60 years, without [Noble's] knowledge

or consent." ***Id.*** at 41. Noble insists that Niles and Barbato "maliciously

crafted said report to avoid any facts/evidence of [Noble's] innocence and [to]

give[] [the] false impression that [Noble was] agreeing to guilt[, d]espite [the]

fact that [Noble had] always declared his innocence…." ***Id.*** at 41-42. Noble

also complains that the mitigation report is inaccurate regarding his prison

history, and that Barbato and Niles refused to meet with him to discuss his

actual prison record. ***Id.*** at 42-43.

Noble has failed to demonstrate that he was prejudiced by Barbato's

alleged ineffectiveness. Our review of the record, and this Court's decision on

direct appeal in which Noble challenged the legality and discretionary aspects

of his sentence, convinces us that Noble's sentence would not have been different, even had Barbato represented Noble exactly as Noble claims he should have.

For instance, in Noble's direct appeal from his resentencing, this Court detailed the evidence presented to the resentencing court, and what transpired during the resentencing proceeding, as follows:

Prior to the resentencing hearing, [Barbato] filed a sentencing memorandum requesting a sentence of time served or 20 to 60 years' incarceration. [Barbato] argued that the doctor who evaluated Noble in 1992 had opined that he had a strong possibility of rehabilitation with proper counseling and treatment. Noble had struggled in school at the time, in part because he had to care for his siblings due to his mother's alcoholism, but he did not suffer from addiction or mental illness himself. He had one prior juvenile adjudication for terroristic threats following an altercation with his stepfather after Noble witnessed him abusing his mother. [Barbato] argued that Noble became very religious following his incarceration and sought parole so that he could become a productive member of society. [Barbato] reiterated that Noble was not proven to be the shooter and argued that he did not pose a danger to society if released. Finally, the memorandum argued that because there was no constitutional sentencing scheme for second-degree murder at the time of his 1992 sentencing, Noble should be sentenced based on the sentencing statute for the most serious lesser-included offense of third-degree murder. Based on that statute, Noble would be sentenced to a maximum of 20 years of incarceration or time served. The memorandum requested in the alternative that Noble be sentenced to 20 to 60 years' incarceration, as Noble's co-defendant had been sentenced to 20 to 50 years of incarceration following resentencing.

The Commonwealth filed a sentencing memorandum requesting that the trial court resentence Noble to 50 years to life imprisonment. The Commonwealth asserted that while Noble was convicted of second-degree murder because the homicide occurred during the course of a robbery, it believed Noble was the actual shooter. The Commonwealth's memorandum focused on

- 15 -

Noble's prison record, listing his numerous misconducts, mostly for refusal to obey an order, which resulted in his placement in disciplinary custody over the years. He incurred two misconducts for assault during his incarceration, including one in 2014 for an assault on a staff member. Noble also pled guilty in 2005 for Possessing Weapons or Implements for Escape and was sentenced to 1 to 2 years of incarceration. The Commonwealth attached prison records to its memorandum setting forth Noble's misconducts and 2005 criminal conviction in more detail. The Commonwealth argued that a sentence of 50 years to life imprisonment was necessary because Noble remained a threat to the community and had not shown meaningful rehabilitation during his incarceration.

At the beginning of the resentencing hearing, Noble spoke on his own behalf and informed the trial court that he did not agree with [Barbato's] requested 20 to 60 year sentence. [N.T. Resentencing Hearing] at 2-3. He maintained his innocence of the crimes and asserted that he would only agree to a sentence of time served. The trial court instructed him that if he was dissatisfied with his attorney's performance, Noble could file a PCRA petition raising an ineffective assistance of counsel claim after the resentencing hearing.

The first witness to testify on Noble's behalf was Kaitlyn Dolak, a case manager at GECAC.[3] Dolak explained that she assists individuals who are released from incarceration transition back into the community by helping them find housing, employment, mental health services and drug and alcohol services. The goal of GECAC's services is to assist in reintegrating into the community and provide support services that reduce the risk of recidivism.

[3] While not defined in the record, we understand this to refer to the Greater Erie Community Action Committee. *See* GECAC: Greater Erie Community Action Committee, www.gecac.org, last visited 6/5/20.

Dolak interviewed Noble while he was incarcerated but did not review any of his institutional records. She reported that after an interview, GECAC accepted Noble into the program for intensive case management services, which would include direct services from the program for at least one year. She reported that Noble was cooperative and receptive to services. Since he was interested in HVAC training, GECAC would assist him [with] finding a training program and providing transportation. Noble had

reported that he would live with family if released and Dolak would meet with him at least once a week to provide services.

Noble also presented testimony from Rahnay Ritchie, a friend who had known Noble since middle school. Ritchie described Noble as outgoing and bright and testified that Noble had never gotten into trouble or fights when they knew each other. He believed the robbery and murder was out of character for Noble at the time. Emberly Noble, Noble's sister, also testified that she exchanged letters with Noble throughout his incarceration to give him updates and information on their family. Emberly testified that Noble frequently offered her advice and support for issues in her personal life and was a positive influence on her before and after his incarceration. She testified that he had been a protective older brother before his incarceration.

Shadara Feliciano, Noble's cousin, testified that she also wrote to Noble on a weekly basis during his incarceration. She frequently sought his advice, thought of him as a father figure, and viewed him as a positive influence in her life. Feliciano testified that the family would support Noble if he was released from incarceration and help him transition back into the home. Carlajzah Mendez, Noble's niece, also testified that she views Noble as a father figure and had sought his advice by writing him letters during his incarceration. She testified that Noble provided her with support and was a positive influence and encouraged her to pursue her education.

Finally, Noble testified on his own behalf. He began by denying all involvement in the robbery and murder. The trial court reminded him that he had been convicted and the hearing was for the purposes of resentencing only. In addition, the trial court stated, "[n]o one is saying today, or at least I'm not, that you are here as the shooter. That has not been proven in court, at least not up to this point." N.T. [Resentencing Hearing] at 30. The trial court then directed Noble to focus his comments on factors relevant to the resentencing, such as Noble's character, what he had accomplished in prison, and the ways in which he had changed or stayed the same since his conviction. Noble argued that his actions during the crime were a relevant factor in resentencing pursuant to *Miller*, as it directed courts to consider the extent of the defendant's participation in the crime when sentencing juveniles found guilty of murder. Noble then attempted to make legal arguments regarding the proceedings at his decertification hearing in 1992 and the alleged *ex post facto* application of the

- 17 -

sentencing statute to his second-degree murder conviction. The trial court repeatedly directed him to speak to his own character and growth and to allow his attorney to make any relevant legal arguments.

Noble testified that despite being incarcerated in an adult prison since he was 16 years old, he has tried to better himself, "not get caught up in a lot of negativity around [him], and also not become a hardened criminal." [*Id.*] at 36. He earned his GED and a degree in African American History and Science. He testified that he also attempted to educate himself outside of the prison's formal programs. He said that over the years he had attempted to be an advocate for other prisoners who had been mistreated or wronged while incarcerated, and he had written and published work regarding solitary confinement. He acknowledged that he had "some violent altercations" over the years, but said that he was not a violent person and understood that there are better ways to handle problems. He reiterated his innocence for the crimes for which he was convicted and said he had tried over the years to speak up against injustice in the court system. He again argued that he did not belong in an adult prison and that he had been confused by the court system for many years during and after his initial trial proceedings.

The trial court again told Noble that he was convicted of the crimes charged and should not make argument regarding his culpability. The trial court also stated that it did not believe Noble did not understand the trial proceedings and that Noble was an "intelligent young man" who had understood the facts of the case and the witnesses against him. Noble responded that his confusion and frustration at his conviction had led to some of his misconducts and violations while in prison, but that he understood right and wrong and could not excuse his actions. He requested that the trial court disregard [Barbato's] sentencing recommendation and resentence him to time served. Finally, he acknowledged the victim's family, saying "I'm very, very sorry for your loss and your pain and suffering—the pain and suffering, and I hope one day, you acknowledge the facts in this case have proven I'm not the one who killed [the victim], and I'm deeply sorry and remorseful for what happened. [*Id.*] at 43-44.

The Commonwealth called William Niles, [Barbato's] expert who authored a mitigation report. Niles testified that this case was the first time he had written a mitigation report but he had worked with former prisoners in the past. He opined in his report that

- 18 -

Noble was a credit to his community in prison despite some misconducts and assaults while incarcerated, including an assault on a prison staff member. Based on interviews with Noble and his family, Niles concluded that he had a low risk of reoffending if released. He believed Noble was a credit to the community based on letters he wrote advocating on behalf of other inmates. Niles noted that Noble had maintained employment while incarcerated, though he was suspended from his jobs at times and placed in restricted housing following various violations.

The Commonwealth also presented testimony from Scott Cleaver, the victim's nephew. Cleaver testified that the victim had suffered polio as a child and had health issues until his death as a result. The victim's mother died when he was a child and his father was an alcoholic, and the victim developed alcoholism in his adulthood. After retiring and becoming sober, he began driving a cab because he "enjoyed people." [*Id.*] at 51. Cleaver said that his family had worried about the victim working as a cab driver because he was incapable of protecting himself in the event of a robbery. Cleaver testified that he was "positive" that Noble killed his uncle and requested that the court impose a life sentence. [*Id.*] at 52.

*Noble*, No. 204 WDA 2020, unpublished memorandum at *3-10 (footnote omitted; some brackets added).

In imposing Noble's sentence, the trial court explained:

The [c]ourt would note first of all, that he finds there's insufficient evidence now, as there was back then as a matter of law, to determine that [Noble] was, in fact, the shooter, and therefore, he will not be sentenced with that as a factor.

The [c]ourt notes that [Noble] was 15 at the time of the crime, and as the Supreme Court has said of people his age, there is diminished mental capacity, and lack of culpability, and the [c]ourt has considered that as well.

Although [Noble] was 15, he was of, at least, average intelligence. He had no — or there was no evidence of any intellectual disability, and he did not suffer from any mental illness as a prior psychological report has indicated that was done at the time.

[Noble] indicates he has remorse for what happened, but not for his participation in what happened, and refuses to accept any

- 19 -

responsibility for that, even though the verdict indicates otherwise.

The [c]ourt has also considered the circumstances of [Noble's] childhood, the fact that he obtained a GED, and the fact that he has done some good things in prison to help others. The [c]ourt, however, cannot overlook his prison record and his misconducts, transfers and disciplinary problems that he has caused or been involved in in prison, as well as the fact that within the prison system, he was convicted of assault and related offenses in 2014, although not in the legal system. He does have a conviction from 2005, however, for having a weapon or implements, for which he received one to two years.

The [c]ourt would note that the impact on the victim in this case cannot be diminished or understated. Obviously, the victim suffered the ultimate consequence. He was killed, and therefore, not only does he have no further life, but his family members did not have [an] opportunity to have a life with him, and by all accounts, he had accomplished a great deal over a number of handicaps, and being a fruitful and good citizen in the community, who was working to serve the community and better himself.

And he was, in fact, helpless based on his physical disabilities, so the killing certainly is considered by the community, to be outrageous and something that no civilized society should tolerate.

*Id.* at *19-20 (quoting N.T. Resentencing Hearing at 62-64).

In determining that the court did not abuse its discretion in fashioning Noble's sentence, we stressed that the court's statement in sentencing showed it "considered all required factors under [42 Pa.C.S. §] 9721(b) in imposing its sentence, including Noble's rehabilitative needs based on his positive achievements in prison as well as his record of misconducts and other violations." *Id.* at *21. Notably, Noble argued on direct appeal "that the information the trial court relied on regarding his misconducts and disciplinary record while incarcerated was inaccurate[,]" *id.* at *22, and "that the

- 20 -

documentation the Commonwealth submitted to the trial court prior to sentencing did not accurately set forth his record of misconducts while in prison[,]" *id.* at *23. In rejecting this argument, we stressed that "Noble admitted at sentencing and in his *pro se* post-sentence motion that he earned numerous misconducts and violations during his incarceration and has spent much of his incarceration in restrictive housing as a result." **Id.** Additionally, we recognized that

> [t]he trial court in this case presided over Noble's pre-trial, trial and sentencing proceedings in 1992 and 1993 and was familiar with the history of the case. Prior to the resentencing hearing, the trial court reviewed the pre-sentence investigation report, the mitigation report, letters submitted on behalf of Noble, victim impact statements and the sentencing memorandums from the Commonwealth and the defense. [The court also heard] … testimony at the sentencing hearing from character witnesses for Noble, Noble himself, Niles and Scott Cleaver….

*Id.* at *19. We also observed that "[t]he sentence renders Noble eligible for parole when he is approximately 56 years old, granting him a meaningful opportunity to live a portion of his life outside of prison." **Id.** at *21.

Given the entirety of the evidence before the trial court, and our in-depth analysis of the court's sentencing decision on direct appeal, we conclude that Noble's second through eighth claims of Barbato's ineffectiveness do not demonstrate that Noble's sentence would have been different but for counsel's alleged misconduct. The record shows that Barbato presented reasonable arguments, character witnesses, and other mitigating evidence on Noble's behalf. The fact that Barbato may have been addicted to drugs and alcohol, and committing offenses against clients in other, unrelated cases, does not

automatically establish that he acted ineffectively in Noble's case. Instead, Noble must show that Barbato's drug and alcohol addictions, and/or his legal issues, negatively affected his representation of Noble in this case. *See Commonwealth v. Burton*, 417 A.2d 611, 614–615 (Pa. 1980) (finding that counsel's alleged inebriation during trial did not constitute ineffectiveness where there was no indication on record that counsel's drinking had affected the quality of his representation); *Commonwealth v. McCloy*, 574 A.2d 86, 90-91 (Pa. Super. 1990) (holding "that where … defense counsel's personal, legal troubles are unrelated to those of the client whom he is representing, there is no *per se* rule which commands that counsel be deemed constitutionally ineffective[;]" instead, "the defendant must affirmatively show that his right to a fair trial was prejudiced by his counsel's representation"). Noble has failed to meet this burden.

For instance, Noble does not state what mitigating evidence Barbato and/or Niles should have presented, or what further investigation would have uncovered that could have impacted the court's sentencing decision. He also does not explain how Barbato's purported failures to communicate with him or turn over certain documents to Noble impacted the outcome of his resentencing hearing. Moreover, we discern nothing unreasonable about Barbato's acknowledging Noble's guilt and asking the court to impose a sentence of 20 to 60 years' imprisonment. Noble had been found guilty by the jury at that point, and his sentencing request of time served was not only highly unlikely, but was made clear to the court by Noble himself.

In regard to Noble's lengthy discussion of the ostensible inaccuracies in the Commonwealth's recitation of his prison record, it appears that Noble is not disputing that many of the misconducts/violations **actually occurred** but, instead, he is attacking the specific details and significance of those incidents. Moreover, as we noted on direct appeal, Noble admitted at the resentencing hearing that he had "some altercations, some violent altercations" while incarcerated. N.T. Resentencing Hearing at 38. He also stated in his 2019, *pro se* post-sentence motion that he "experienced long-term solitary confinement involuntarily from 2006 to 2013 and 2014 to present[,]" Motion for Reconsideration of Sentence, 5/7/19, at 9; he had three misconducts for assault while incarcerated, *id.* at 11; and he was placed in restricted housing four times for misconducts including assault with a weapon on his cellmate, failure to obey orders, and "false/retaliatory misconduct," *id.* at 13, 14, 17. Given that Noble admits he committed various infractions and offenses while incarcerated, he has failed to demonstrate that, even had Barbato corrected the alleged inconsistencies in the **specifics** of his prison record, the court's sentencing decision would have been different. This is especially true where the court had ample other evidence and considerations that it took into account in fashioning Noble's sentence, as detailed *supra*. Therefore, no relief is due on Noble's second through eighth ineffectiveness claims.

In Noble's ninth claim on appeal, he simply states that "[t]he court abused [its] discretion by not addressing each PCRA issue listed in [the] PCRA petition, page 4, Section 6(c) 4 to 4 c-4." Noble's Brief at 47. We cannot

even discern to what section of Noble's 75-page, handwritten petition he is referring. While Noble also cites an "Exhibit EEE" purportedly submitted to this Court, that is not helpful, given that Noble filed hundreds of pages of exhibits that are numbered and lettered in a confusing fashion. *Id.* We will not scour the record to flesh out Noble's vague claim that the court failed to consider unidentified issues. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review."). Thus, no relief is due on Noble's ninth issue.

In Noble's tenth claim, he briefly asserts that the PCRA court "abused its discretion by ignoring … Barbato's saying[, in his own criminal prosecution, that] his alcohol, marijuana, and cocaine addiction contributed to his neglect/sabotage [of] his clients' cases from 2014 to 2020…." Noble's Brief at 47-48. Again, Barbato's drug and alcohol issues and conduct in other, unrelated cases does not constitute *per se* ineffectiveness, and Noble must demonstrate that Barbato acted ineffectively in this case to be entitled to relief. Thus, the court did not abuse its discretion by not finding Barbato ineffective simply based on his purported admission of misconduct in unnamed, and unrelated, other cases.

Next, Noble contends that Barbato was ineffective for not objecting to purported inaccuracies in the transcript of the resentencing hearing. Specifically, Noble lists numerous portions of his testimony to the resentencing court that he claims were transcribed erroneously. *See id.* at 48-54. Noble

- 24 -

raised a similar claim in his first direct appeal from his resentencing (in which we remanded for Noble to file a post-sentence motion). ***See Noble***, No. 420 WDA 2018, unpublished memorandum at *20-22. Specifically, Noble challenged the trial court's denial of a "Correction Motion" that he had filed, which outlined the alleged inaccuracies in the transcription of the resentencing hearing. In rejecting Noble's claim, we explained:

> In the current appeal, after the official court reporter certified, "I hereby certify that the proceedings and evidence are contained fully and accurately, to the best of my ability, in the notes taken by me on the trial of the above cause, and that this copy is a correct transcript of the same[,]" N.T. [Resentencing Hearing] … at 66, the [resentencing court] further certified that he "approved" the notes of testimony. ***Id.*** The [resentencing] court included similar language in its order denying [Noble's] Correction Motion: "Both the Court Stenographer and the [c]ourt have certified the record to be accurate and there is no other record or recording of the proceeding." Order, 8/28/2018. The … court also explained:
>
>> [I]t appears … [Noble] may have planned to say certain things that he had written down[,] but actually said what was in fact recorded. In any event, even taking all that he claims to have said as accurate, nothing either standing alone or taken together, is of such substance or import as to have resulted in an error which is other than harmless.
>
> Trial Court Memorandum Opinion, [11/8/18, at 1 (single page)].
>
> We accept the representations of the court reporter and of the resentencing judge as to the accuracy and completeness of the notes of testimony from the resentencing hearing, and, as any questions as to the correctness of the notes of testimony are properly decided by the trial court, Pa.R.A.P. 1922(a), 1926(a); [***Commonwealth v.***] ***Szakal***, 50 A.3d [210,] 217 [(Pa. Super. 2012)], we defer to the trial court's determinations about the notes of testimony from [Noble's] resentencing hearing. [Noble] hence merits no relief on this thirteenth issue….

***Id.*** at *21-22.

Given our conclusion that the notes of testimony were accurate and complete, Barbato would have had no reason to object to the purported transcription errors listed by Appellant. Additionally, accepting the resentencing court's decision that the alleged inaccuracies, even if true, were harmless error, Noble clearly was not prejudiced by Barbato's ostensible ineffectiveness. Thus, no relief is due.

In Noble's twelfth through fifteenth issues, he contends that the PCRA court erred by not finding he was entitled to post-conviction relief based on alleged errors by the trial and resentencing courts. Namely, Noble claims the resentencing court erred by not permitting him to raise issues challenging his conviction. **See** Noble's Brief at 54-55. He also insists that the trial court "abused [its] discretion by not granting demurrer to all charges" where the evidence was insufficient, **id.** at 55; the trial court "abused [its] discretion by restricting [Noble's] trial attorney … [from] cross-examination of [a certain] prosecution witness[,]" **id.**; and the trial court erred by refusing to remove certain jurors "with disqualifying views" that demonstrated they could not be fair and impartial, **id.** at 56.

Each of Noble's claims challenging the trial and/or resentencing court's actions could have been raised on direct appeal from his conviction and/or resentencing hearing. Accordingly, they are waived. **See** 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, the petitioner must prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (declaring that "an issue is waived if the

petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding").

In sum, we conclude that the PCRA court did not err in denying Noble's various claims, as none warrant relief. Thus, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/01/2024